Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>B33 WRANGLEBORO II LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No. 1:26-cv-13760<br><br>**COMPLAINT** |

## Introduction

Plaintiff, DENNIS MAURER, an individual ("Plaintiff"), on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, B33 WRANGLEBORO II LLC, a Delaware Limited Liability Company ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD").

## The Parties

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise *sui juris*. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, B33 WRANGLEBORO II LLC, owns and/or operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## **Jurisdiction and Venue**

3. Defendant's property/place of public accommodation is a shopping center with several tenant spaces – including BAM! (Books-A-Million), Joe Muggs Coffee, Chipotle Mexican Grill, and Men's Wearhouse – located at 2200 Wrangleboro Road, Mays Landing, NJ 08330 (also known as Block 1319.01, Lot 1 on the municipal tax map of the Township of Hamilton, Atlantic County) (the "Property").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*[1]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C. § 1367.

7. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

---

[1] *See also* 28 U.S.C. §§ 2201 and 2202.
[2] 28 C.F.R. §§ 36.201(a) and 36.104.

8. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of Title III.[3] Although the allocation of responsibility for compliance may be determined by lease or other contract as between the landlord and its tenants, any such allocation does not relieve the Defendant of its obligations to the Plaintiff. As the owner and landlord of the Property, the Defendant is responsible for the removal of the barriers to access identified herein throughout the Property – including those within the tenant spaces.

9. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

## Factual Background

10. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

11. Mr. Maurer is the President of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

---

[3] 28 C.F.R. § 36.201(b).

[4] As defined by 28 C.F.R. § 36.105(b)(1)–(2).

12. Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs – the same holds true for the Property which forms the basis of this action.

13. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

14. Mr. Maurer has visited the Property on multiple occasions and has patronized each of its tenants – BAM!, Joe Muggs Coffee, Chipotle, and Men's Wearhouse – on multiple occasions. His most recent visits occurred on or about April 4, 2026, and again on or about September 12, 2026, when he found that the barriers to access he had previously encountered had not materially changed. Mr. Maurer and his family have visited the Property as bona fide patrons with the intent to avail themselves of the goods and services offered to the public within but found it to be rife with violations of the ADA – both in architecture and in policy.

15. Mr. Maurer and his family have an affinity for Chipotle, which they patronize regularly. Mr. Maurer also values BAM!, as it is one of the few remaining physical bookstores in the area.

16. Mr. Maurer resides approximately ten (10) miles from the Property. The Property is located within the area of his home and in close proximity to locations where he frequently travels, shops, and dines – including the Hamilton Mall, Target, and Dick's Sporting Goods.

17. In sum, the Property is (1) a place Mr. Maurer regularly visits with his family, (2) approximately ten miles from his home, (3) home to tenants for which he and his family have a particular affinity, and (4) in close proximity to the stores and shopping destinations he frequents.

18. Mr. Maurer will return to the Property in the future when dining at Chipotle with his family, when shopping at BAM! and the Property's other tenants, and when traveling to and through Mays Landing as incident to his usual shopping and travels in the area. Mr. Maurer shall make these visits not only as a patron but also to monitor any progress made with respect to ADA compliance – he hopes his return visits are not further deterred nor made in vain.

19. Mr. Maurer has physically visited the Property and personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety during his visits to the Property.

20. The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

21. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced – which are listed in Paragraph 29 of this complaint.

22. Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard, and in full compliance with the ADA.

**COUNT I**
**Violation of Title III of the**
**Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.***

23. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

24. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[5]

25. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[6]

26. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability."[7]

27. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

---

[5] 42 U.S.C. § 12101(a)(1).
[6] *Tennessee v. Lane*, 541 U.S. 509, 535–36 (2004) (Ginsburg, J., concurring).
[7] 42 U.S.C. § 12188(a)(1).

28. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 29 is both technically feasible and readily achievable. Plaintiff's expert has based this judgment on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

29. The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**Common Areas – Parking and Exterior Accessible Route**

a. The designated accessible parking spaces throughout the Property are not maintained – the access aisle striping is worn and largely missing, the painted symbols are faded, and the pavement within the spaces and access aisles is cracked and deteriorating, with loose aggregate on the surface – do not contain proper identification signage, contain slopes steeper than 1:48 (2.08%), and contain abrupt changes of level greater than ¼ inch; violations of the ADAAG and Sections 216.5, 302, 303, 402, 502, and 502.6 of the 2010 ADA Standards, which require accessible car spaces at least 96 inches wide (van spaces 132 inches wide, or 96 inches wide with a 96-inch access aisle), access aisles at least 60 inches wide extending the full length of the spaces they serve, parking spaces and access aisles with no slopes steeper than 1:48 (2.08%) in any direction, floor and ground surfaces that are stable, firm, and slip resistant, and identification signs mounted at least 60 inches above the ground to the bottom of the sign, with van spaces designated "van accessible".

These barriers have presented Mr. Maurer with a tipping hazard which could also cause damage to his wheelchair; to avoid these obstacles he parks away from the facility in a flat maintained area, travels around the obstacles, and then through the vehicular area of the lot in order to reach the tenant entrances – but even when doing so he must still make use of the improper curb ramps and routes as he has no other option.

b. The designated accessible parking areas fail to adjoin an accessible route – the access aisles serving the accessible spaces in front of BAM! and Joe Muggs Coffee terminate at the raised storefront curb with no curb ramp, and at least one accessible space in front of Chipotle is not served by an adjacent access aisle at all; violations of the ADAAG and Sections 208.3.1, 402, 406, 502, and 502.3 of the 2010 ADA Standards, which require accessible parking spaces to be located on the shortest accessible route to an accessible entrance, each accessible space to be served by an access aisle at least 60 inches wide that extends its full length and adjoins an accessible route, and curb ramps to have a running slope no steeper than 1:12 (8.33%), a cross slope no steeper than 1:48 (2.08%), and a level landing at least 36 inches long at the top. As a result, Mr. Maurer cannot travel directly from the accessible parking spaces onto the storefront sidewalk; he must instead travel through the vehicular area of the lot in search of a curb ramp, which has caused him frustration and endangered his safety.

c. The exterior accessible route along the storefront sidewalks is impeded by abrupt changes of level and cross-sloping steeper than 1:48 (2.08%) – including open and vegetated joints and patched holes in the sidewalks, and an open joint with a vertical

displacement between sidewalk slabs at the top of the curb ramp near Chipotle; violations of the ADAAG and Sections 303 and 402 of the 2010 ADA Standards, which require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no steeper than 1:2). These conditions have presented Mr. Maurer with a tipping hazard which could cause injury from a fall and damage to his wheelchair.

d. The Property fails to provide a continuous accessible route along the exterior sidewalks which allows Mr. Maurer to move from tenant space to tenant space throughout the entirety of the Property; violations of the ADAAG and Sections 206.2.2 and 402 of the 2010 ADA Standards, which require at least one accessible route connecting all accessible buildings, facilities, elements, and spaces on the same site, and require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch. As a result of the aforementioned violation, Mr. Maurer cannot travel between tenant spaces without returning to the vehicular area of the lot.

e. The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles); a violation of the ADAAG and Sections 208 and 502 of the 2010 ADA Standards, which require the number of accessible spaces set by Table 208.2 based on the total number of parking spaces provided, with at

least one of every six accessible spaces being van accessible, located on the shortest accessible route to an accessible entrance. Due to the lack of compliant accessible parking (specifically the lack of compliant van access aisles), Mr. Maurer has been forced to park away from the tenant spaces so that he could freely access his vehicle via his fold-out ramp; doing so and parking without the benefit of an access aisle adds the additional fear of becoming blocked out from his van (or trapped inside) by an adjacent vehicle.

f. The Property fails to provide a compliant route to the adjacent street, sidewalk, and/or public transportation route – the frontage along Wrangleboro Road consists of curbed landscaping and grass with no accessible route from the public sidewalk into the site. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits his options for access and transportation, and a violation of the ADAAG and Section 206.2.1 of the 2010 ADA Standards, which requires at least one accessible route within the site from public streets and sidewalks, public transportation stops, and accessible parking to an accessible entrance.

**Tenant Spaces – Access to Goods and Services**

g. Entering the tenant spaces is impeded by abrupt changes in level at the thresholds, excessive sloping at the base of the doors, and/or improper door hardware – including the raised metal threshold at the entry doors of BAM!; violations of the ADAAG and Sections 303 and 404 of the 2010 ADA Standards, which require a clear opening width of at least 32 inches, thresholds no higher than ½ inch (¾ inch for existing or altered thresholds, beveled no steeper than 1:2), hardware operable

with one hand without tight grasping, pinching, or twisting of the wrist mounted 34 to 48 inches above the floor, and level maneuvering clearance at least 60 inches deep with at least 18 inches beyond the latch side on the pull side for a front approach. Due to these barriers Mr. Maurer cannot freely and safely enter these tenant spaces without assistance.

h. The tenant spaces, including BAM!, Joe Muggs Coffee, Men's Wearhouse, and Chipotle, provide payment counters and other service elements which are mounted beyond the prescribed reach ranges; a violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards, which require operable parts to be located within 15 to 48 inches above the floor for an unobstructed reach, and a portion of each sales and service counter at least 36 inches long to be no higher than 36 inches above the floor. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these service elements (countertops, payment devices, etc.).

i. Joe Muggs Coffee and Chipotle lack the required number of accessible dining tables, including within their exterior seating areas – the exterior tables at Joe Muggs Coffee have splayed legs and weighted umbrella bases beneath them, and the exterior tables at Chipotle are pedestal tables within a railed enclosure; violations of the ADAAG and Sections 226 and 902 of the 2010 ADA Standards, which require at least 5% of the seating spaces at dining surfaces to be accessible, with surfaces 28 to 34 inches above the floor, knee clearance at least 27 inches high and 30 inches wide, and a 30-inch by 48-inch clear floor space positioned for a forward approach. The tables currently available do not allow Mr. Maurer to fully

approach with his wheelchair, get his knees underneath, and dine in a comfortable manner alongside his family.

**Tenant Spaces – Restrooms**

j. The restrooms within BAM! and Chipotle are inaccessible to Mr. Maurer as they contain barriers to access including, but not limited to, incorrect signage, inaccessible water closets, and an overall lack of maneuvering clearance; violations of the ADAAG and Sections 601 and 603 of the 2010 ADA Standards, which require a turning space (a 60-inch diameter circle or a T-shaped space) within the room, doors that do not swing into the clear floor space of any fixture, mirrors with the bottom of the reflecting surface no higher than 40 inches above the floor where located above a lavatory, and tactile signage on the latch side of the door between 48 and 60 inches above the floor. Due to these barriers Mr. Maurer could not freely make use of the restrooms.

k. The restrooms within BAM! and Chipotle contain dispensers – including lever-operated paper towel dispensers – which are mounted beyond the reach of wheelchair users; violations of the ADAAG and Sections 308 and 309.4 of the 2010 ADA Standards, which require dispensers and other operable parts to be mounted between 15 and 48 inches above the floor and to be operable with one hand without tight grasping, pinching, or twisting of the wrist, with an operating force no greater than 5 pounds. Due to these elements being mounted outside of the prescribed reach ranges Mr. Maurer could not make use of the dispensers.

l. The restrooms within BAM! and Chipotle contain lavatories which lack the required knee and toe clearance and pipe insulation – the water supply and drain

pipes beneath the lavatories are exposed and not fully insulated, and the knee space beneath the lavatory in the BAM! restroom is used to store a mop and wet-floor sign; violations of the ADAAG and Sections 305 and 606 of the 2010 ADA Standards, which require a 30-inch by 48-inch clear floor space at the lavatory, the front of the lavatory rim or counter to be no higher than 34 inches above the floor, knee clearance at least 27 inches high and toe clearance at least 9 inches high beneath it, and exposed water supply and drain pipes to be insulated or otherwise configured to protect against contact. Due to these barriers Mr. Maurer could not fully approach the sinks in order to wash his hands and was exposed to the risk of burns and injury to his legs.

m. The restrooms within BAM! and Chipotle provide grab bars which are improperly mounted and contain toilets with improper centerlines; violations of the ADAAG and Section 604 of the 2010 ADA Standards, which requires the water closet centerline to be 16 to 18 inches from the side wall or partition, a clearance around the water closet at least 60 inches wide and 56 inches deep (59 inches for floor-mounted units), a side-wall grab bar at least 42 inches long located no more than 12 inches from the rear wall and extending at least 54 inches from it, a rear-wall grab bar at least 36 inches long, grab bars mounted 33 to 36 inches above the floor, and flush controls on the open side of the water closet. Due to these barriers Mr. Maurer cannot independently use the toilets.

n. In the BAM! restroom, a child protection seat is mounted on the partition within the required clearance around the water closet, the toilet paper dispenser is mounted well forward of the water closet, the water closet centerline exceeds 18 inches from

the side wall, and the door of the accessible toilet compartment swings into the compartment; violations of the ADAAG and Sections 604.2, 604.3.2, 604.7, and 604.8.1.2 of the 2010 ADA Standards, which require the clearance around the water closet to be free of all elements other than the associated grab bars, dispensers, sanitary napkin disposal units, coat hooks, and shelves, the toilet paper dispenser to be located 7 to 9 inches in front of the water closet (measured to the centerline of the dispenser), and the compartment door not to swing into the minimum required compartment area. Due to these barriers Mr. Maurer cannot position his wheelchair to transfer to the toilet, nor reach the toilet paper dispenser from the toilet.

o. The use of the restroom doors within BAM! and Chipotle is impeded by improper signage and a lack of latch-side maneuvering clearance – in both restrooms the identification sign is mounted on the door rather than on the wall at the latch side, and in the BAM! restroom a trash receptacle is stored within the maneuvering clearance on the latch side of the door; violations of the ADAAG and Sections 404 and 703.4.2 of the 2010 ADA Standards, which require level maneuvering clearance at the door – including at least 18 inches beyond the latch side on the pull side for a front approach – a clear opening width of at least 32 inches, hardware operable without tight grasping, pinching, or twisting of the wrist mounted 34 to 48 inches above the floor, and identification signs mounted on the wall at the latch side of the door. Due to the lack of clear floor space Mr. Maurer cannot maneuver his wheelchair to enter or exit the restrooms without assistance.

30. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28

C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 C.F.R. § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[8]

31. The discriminatory violations described in Paragraph 29 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally encountered or observed by Mr. Maurer. Given the violations discovered and listed herein, the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property – within both the common areas and the tenant spaces – which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[9]

32. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury, and damage without the immediate relief provided for by the ADA and requested herein.

33. Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges,

---

[8] 28 C.F.R. § 36.104.

[9] *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them); *accord Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) (per curiam) (plaintiff who used a wheelchair had standing to challenge barriers at a restaurant related to his disability that he had not yet encountered); *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000) (plaintiff who encountered a barrier had standing to challenge other barriers at the property related to his disability).

advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

34. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[10]

35. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities – including, as described above, by failing to maintain the accessible parking spaces and access aisles, and by storing a mop, a wet-floor sign, and a trash receptacle within the clear floor spaces of the accessible elements in the BAM! restroom.[11]

36. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to undertake such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[12]

37. Pursuant to 28 C.F.R. § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

---

[10] 42 U.S.C. § 12182(b)(2)(A)(iv).
[11] 42 U.S.C. § 12182(b)(2)(A)(ii).
[12] 42 U.S.C. § 12182(b)(2)(A)(iii).

38. The ADA contains no "grandfather" provision. Title III's barrier-removal obligation applies to every existing place of public accommodation without regard to when it was constructed,[13] and the "grandfather" provisions often found in local building codes do not exempt a public accommodation from its obligations under the ADA.[14] A facility's age bears only on which standard governs a given element, not on whether the ADA applies; the sole protection the regulations afford existing elements is the limited safe harbor of 28 C.F.R. § 36.304(d)(2), which applies only to elements that already comply with the 1991 Standards.

39. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993,[15] then the Defendant's facility must be readily accessible to and usable by individuals with disabilities in accordance with the 1991 Standards or, for construction commenced on or after March 15, 2012, the 2010 Standards.[16]

40. Pursuant to 28 C.F.R. § 36.402(a)(1), "any alteration" made to the Property after January 26, 1992 – including alterations within the tenant spaces – must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[17] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

---

[13] 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a).
[14] U.S. Dep't of Justice, Civil Rights Div., *ADA Update: A Primer for Small Business* (Mar. 2011).
[15] As defined by 28 C.F.R. § 36.401(a)(2).
[16] 28 C.F.R. § 36.406(a).
[17] 28 C.F.R. § 36.402(a)(2).

41. Upon information and belief, the Property was constructed for first occupancy after January 26, 1993, and has been renovated and altered since that date – including when the tenant space now occupied by BAM! was converted from a Borders bookstore and reopened as a Books-A-Million store in or about January 2012. Each such alteration was required to be made readily accessible to and usable by individuals with disabilities to the maximum extent feasible,[18] and each alteration affecting an area containing a primary function – including the tenant spaces – was further required to provide an accessible path of travel to the altered area, including the restrooms serving it, to the extent the cost of doing so is not disproportionate to the cost of the overall alteration.[19]

42. 28 C.F.R. § 36.304(d)(2) controls with respect to the corresponding technical and scoping specification to which each element that has not been altered must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered on or after March 15, 2012, and that comply with the corresponding technical and scoping specifications in the 1991 Standards, are not required to be modified to comply with the 2010 Standards.

b. Before March 15, 2012, elements that did not comply with the 1991 Standards were required to be modified to comply with either the 1991 Standards or the 2010 Standards.

c. On or after March 15, 2012, elements that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

---

[18] 28 C.F.R. § 36.402.
[19] 28 C.F.R. § 36.403.

43. Plaintiff is not required to notify the Defendant of its violation of the ADA nor its ongoing discrimination prior to the filing of this action. To that end, Mr. Maurer has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

44. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

45. Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

46. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible to and usable by the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures all violations of the ADA.[20]

**WHEREFORE**, Plaintiff respectfully demands:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property – within both the common areas and the tenant spaces – listed herein and those later found through discovery, within the next six months; (2) make

---

[20] 42 U.S.C. § 12188(b)(2).

the Property accessible to and usable by individuals with disabilities; and (3) require the Defendant to make reasonable modifications in policies, practices, or procedures, to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

**COUNT II**
**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 *et seq.***

47. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

48. The Property is a place of public accommodation as defined by N.J.S.A. 10:5-5.

49. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[21]

---

[21] N.J.S.A. 10:5-4.

50. As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

51. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation; in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering the Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses, including expert fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 22nd day of October 2026,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*